IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 23-cv-01112-CNS-NRN

GAIL SVOBODA,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Defendant.

---

## ORDER

---

Defendant State Farm Mutual Automobile Insurance Company moves for partial summary judgment on Plaintiff's statutory and common law bad-faith denial claims for relief. ECF No. 56. Plaintiff responded in opposition, ECF No. 107, and Defendant replied, ECF No. 110. For the reasons explained below, the Court DENIES Defendant's motion.

### I.    FACTUAL BACKGROUND[1]

This is an underinsured motorist (UIM) case. On April 18, 2018, Plaintiff was involved in a motor vehicle accident with Sara Pillsbury and claimed injuries following the accident. ECF No. 56, ¶¶ 1–2. Ms. Pillsbury had a $100,000 insurance policy for bodily

---

[1] The Court draws the background facts largely from the parties' undisputed material facts. Where applicable, the Court notes the facts that the parties dispute. Whether the Court draws the facts from Plaintiff's or Defendant's briefs, it construes the factual record and reasonable inference in the light most favorable to Plaintiff as the nonmoving party. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).

injury liability coverage. *Id.*, ¶ 3. At the time of the accident, Plaintiff was insured by Defendant with a policy that included UIM coverage. *Id.*, ¶ 4.

On April 6, 2021, Plaintiff settled her claim against Ms. Pillsbury for the bodily injury policy limit of $100,000. *Id.*, ¶ 5. She then turned to Defendant to make her whole. ECF No. 7, ¶ 14. On July 8, 2021, State Farm advised Plaintiff that it needed to obtain her medical records to evaluate her claim and requested that she sign an Authorization for Release of Information and provide a list of treating providers so that it could request records from those providers. ECF No. 56, ¶ 6.

Between July 8, 2021, and March 2, 2022, Plaintiff admits that she did not provide Defendant with a signed Authorization for Release of Information or a list of treating providers. *Id.*, ¶ 7. Then, on March 2, 2022, Plaintiff sent medical records and bills to Defendant totaling $203,755.72 and demanded that Defendant tender payment. *Id.*, ¶¶ 8–9; ECF No. 107-3 (Plaintiff's demand letter including post-accident medical records).[2] In her letter, Plaintiff explained that on November 8, 2021, she underwent cervical spine surgery, incurring over $64,000 in medical expenses. ECF No. 107, ¶ 2.

On March 4, 2022, Defendant acknowledged receipt of Plaintiff's policy limits demand letter and advised that it was in the process of evaluating her claim. ECF No. 56, ¶ 9. On March 16, 2022, State Farm notified Plaintiff that it had questions concerning her lumbar complaints and the need for a future surgery, and it requested a copy of all treatment records for the five years prior to the accident. *Id.*, ¶ 10; ECF No. 107-4

---

[2] Plaintiff asserts in her response that she included "prior medical records" along with her current medical records and bills in her March 2, 2022 letter, ECF No. 107, ¶ 1, but the Court agrees with Defendant that no prior medical records are reflected in this letter.

(Defendant's March 16, 2022 letter to Plaintiff's counsel). Defendant further informed Plaintiff that upon receipt of all records, it may be necessary to complete a utilization review or Independent Medical Examination. ECF No. 56, ¶ 10.

On March 23, 2022, Defendant's records show that Defendant held a phone conference with Plaintiff's counsel, where counsel stated that Plaintiff "underwent a 3 Level Fusion and [Defendant] must pay [Plaintiff]. . . . He advised [that Plaintiff] had a perfect physical in March of 2018 and so all other priors would be irrelevant. . . . He advised their office won't sent any additional information." ECF No. 110-3.

On April 4, 2022, Defendant notified Plaintiff that it may not have a duty to pay, indemnify, defend or otherwise perform under the policy because Plaintiff had failed to comply with the policy term that required her to provide a Medical Provider List and Authorization to Release Information, and Defendant requested that Plaintiff comply with the request within the next 60 days.[3] ECF No. 56, ¶ 12. Four hours later, Plaintiff's counsel responded with a letter dated April 1, 2022, where she contends that she provided prior medical records which "established her good health condition prior to the subject motor vehicle collision." *See* ECF No. 110-1 (email from Plaintiff's counsel to Defendant's counsel on April 4, 2022, at 3:30 p.m.); ECF No. 107-5 (Plaintiff's counsel sending same letter directly to State Farm on April 4, 2022). Defendant denies that the prior records

---

[3] Plaintiff denies this fact, but she provides no evidence to support her denial, stating that, "[o]n April 4, 2022, Defendant did not notify Plaintiff or Plaintiff's counsel of what has been represented as this undisputed material fact. This is a misrepresentation of fact by Affiant Todd Bierbaum and Defendant has offered no evidence via exhibit other than the self-serving Affidavit to substantiate the same." ECF No. 107, ¶ 12. Such a denial is insufficient. *See* CNS Civ. Practice Standard 7.1D(b)(4) ("Any denial shall be accompanied by a brief factual explanation of the reason(s) for the denial and *a specific reference to material in the record supporting the denial*." (emphasis added)).

3

established Plaintiff's good health condition before the April 18, 2018 accident, noting that such records demonstrated that she was taking Tramadol for back pain in 2016. ECF No. 110, ¶ 4.

Following the correspondence on April 4, 2022, Defendant asked Dr. Philip A. Stull of Integrated Medical Evaluations, Inc. to prepare a utilization review report, which he submitted on April 22, 2022. *Id.*, ¶ 13. Dr. Stull opined that, at most, Plaintiff sustained a minor cervical and lumbar myofascial and muscular strain injury that would have resolved in four to six weeks with conservative treatment. *Id.*, ¶ 14; ECF No. 107-6 (Stull Report). He further indicated that Plaintiff did not sustain any significant injury to her cervical or lumbar spine in the accident, nor did she sustain any permanent physical impairment. ECF No. 56, ¶ 14. On May 2, 2022, Defendant provided Plaintiff a copy of Dr. Stull's report. *Id.*, ¶ 15.

On June 21, 2022, Defendant obtained a report prepared by Compass Consulting Engineers, which determined that the delta V, or severity of the crash, was lower than five miles per hour. *Id.*, ¶¶ 16–17. On June 29, 2022, Defendant advised Plaintiff that it had reviewed the information submitted by Plaintiff along with the reports prepared by Dr. Stull and Compass Consulting Engineers and "re-evaluated" Plaintiff's claim to have a value within the liability policy limits of the responsible party (Ms. Pillsbury). *Id.*, ¶ 18. Defendant thus did not pay Plaintiff any UIM benefits. *Id.*

On April 6, 2023, Plaintiff filed this lawsuit. ECF No. 7. Three weeks later, on April 27, 2023, Plaintiff provided additional medical records and bills related to Plaintiff's October 13, 2022 lumbar spine surgery as well as the report of John Smith, Plaintiff's

4

accident reconstruction expert, for Defendant's continued evaluation of Plaintiff's UIM claim. ECF No. 107, ¶ 7. And over a year later, on May 6, 2024, Plaintiff sent Defendant additional medical records and bills, including Plaintiff's third spinal surgery, with medical expenses totaling $1,014,536.47. *Id.*, ¶ 8. After reevaluating Plaintiff's claim, Defendant has yet to pay any UIM benefits to Plaintiff. ECF No. 110, ¶ 10.

## II.  LEGAL STANDARDS

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003) (internal quotations and citation omitted); Fed. R. Civ. P. 56(a). The factual record and reasonable inferences must be construed in the light most favorable to the nonmoving party. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The moving party bears the initial burden, but once met, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). Ultimately, a district court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

## III.  ANALYSIS & ORDER

Defendant argues that Plaintiff's bad-faith claims fail for "lack of factual support," stating that Plaintiff "has not provided this Court with any facts to create a triable issue."

5

ECF No. 56 at 5–11. The Court does not agree.

To succeed on a common law claim for bad-faith denial of an insurance claim, the plaintiff must demonstrate that (1) the insurer's conduct was unreasonable and (2) the insurer knew or recklessly disregarded the fact that its conduct was unreasonable. *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1272 (Colo. 1985). Similarly, under Colo. Rev. Stat. § 10-3-1115, an insurer may not "unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Assessing the reasonableness of the insurer's conduct is, in most cases, a question of fact for the jury to decide. *Thompson v. State Farm Mut. Auto. Ins. Co.*, 457 F. Supp. 3d 998, 1003 (D. Colo. 2020) (citing *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 496 (Colo. App. 2011)). Such is the case here. Three material fact disputes illustrate this point.

First, the parties dispute how fast Plaintiff was traveling at the time of the April 18, 2018 accident. As noted above, Compass Consulting Engineers determined that she likely was traveling under five miles per hour. ECF No. 56, ¶ 17. But Plaintiff's accident reconstruction expert, Mr. Smith, opined that the relative impact speed could have exceeded 10 miles per hour. ECF No. 107, ¶ 17. This genuine fact dispute goes directly to the severity of Plaintiff's injuries and the reasonableness of Defendant's investigation and claim denial.

Second, in 2000, Plaintiff was involved in another motor vehicle accident and sustained neck and back injuries. ECF No. 56-2 at 101:15–24 (Plaintiff testifying that she

T-boned another car on a highway and sustained these injuries).[4] Whether Plaintiff's neck and back pain stemmed from the instant 2018 motor vehicle accident or from an earlier accident is a fact dispute that this Court cannot decide on summary judgment. Moreover, Plaintiff argues that, "[a]t no point prior to litigation did Defendant request Plaintiff to provide her prior medical regarding the motor vehicle crash that occurred in 2000." ECF No. 107, ¶ 5. Defendant admits that it did not specifically request records regarding the 2000 motor vehicle accident when it requested prior records in March 2022, but it argues that it had no reason to request additional prior records at that time.[5] ECF No. 110, ¶ 5. The dispute concerning Plaintiff's earlier motor vehicle accident directly relates to the reasonableness of Defendant's conduct.

And third, in his report, Dr. Stull opined that, at most, Plaintiff sustained a minor cervical and lumbar myofascial and muscular strain injury that would have resolved in four to six weeks with conservative treatment. ECF No. 56, ¶ 14. He further indicated that Plaintiff did not sustain any significant injury to her cervical or lumbar spine in the accident, nor did she sustain any permanent physical impairment. *Id.* To the Court's knowledge, Plaintiff has not retained any medical experts specifically to rebut Dr. Stull's opinions—and she certainly does not point to any in her response brief.[6] Again, whether Plaintiff's

---

[4] Defendant states that Plaintiff's treatment following the 2000 motor vehicle accident included physical therapy and cervical facet injections, and moreover that "[m]edical records from 2016 and 2018 indicated that she was taking Tramadol for back pain." ECF No. 56 at 6. Defendant, however, points to no evidence whatsoever to support these assertions—not in its statement of undisputed material facts or in its argument section. The Court thus disregards these unsupported facts for the instant purposes.

[5] Plaintiff first notified Defendant of the 2000 motor vehicle accident on August 11, 2023, in response to Defendant's interrogatories. ECF No. 110, ¶ 5. Defendant further explains that, after Plaintiff acknowledged being in a prior motor vehicle accident, she waited until April 22, 2024, to disclose any medical records related to that prior motor vehicle accident. *Id.*

[6] The Court observes that in previous briefings, Plaintiff has included a letter from her neurosurgeon, Dr. J. Paul Elliot, explaining a series of treatments that Plaintiff completed over three years after the 2018

7

injuries stemmed from the 2018 accident or a prior motor vehicle accident go to the reasonableness of Defendant's conduct.

In sum, the record does not indisputably show that Defendant's conduct was reasonable under the circumstances. The three fact disputes above indicate that genuine issues of material fact remain, making summary judgment inappropriate.

## V.  CONCLUSION

Consistent with the above analysis, the Court DENIES Defendant's partial motion for summary judgment. ECF No. 56.

DATED this 16th day of July 2025.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge

---

accident. ECF No. 52-2 (June 3, 2024 letter describing treatment following Plaintiff's initial consultation on August 16, 2021). Dr. Elliot explained that he did not have imagining prior to the 2018 accident, but he opined in his one-page letter that Plaintiff's prior medical records showed that she was asymptomatic prior to the 2018 accident. *Id.*

8